**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TAYLOR HOGAN and          :
SAVANTE HOPKINS, SR.,     :
                            :
     Plaintiffs,            :
                            :     CIVIL ACTION NO.
v.                        :     1:12-CV-1418-RWS
                            :
WELLSTAR HEALTH       :
NETWORK, INC., DAVID     :
NGUYEN, P.A., individually and  :
as employee of Wellstar Health  :
Systems, Inc., LORRIE TATE,   :
individually and as employee of  :
the Cobb County Sheriff's      :
Department; NEIL WARREN,   :
individually and as Sheriff of Cobb :
County, COBB COUNTY, COBB  :
COUNTY BOARD OF HEALTH, :
JOHN D. KENNEDY, individually :
and as Director of Cobb County   :
Board of Health, ANNA MARIE  :
BOVEE, individually and as     :
employee of Cobb County Board  :
of Health, EVELYN WOLFRAM :
TAYLOR, individually and as    :
employee of Cobb County Board  :
of Health, and MAYDIA       :
LATREECE MOSLEY,        :
individually and as employee of   :
Cobb County Board of Health,   :
                            :
     Defendants.          :

## **ORDER**

This case comes before the Court on: Defendants Neil Warren and Cobb County's Motion to Dismiss [59]; Defendants Cobb County Board of Health, Evelyn Wolfram Taylor, and Maydia Latreece Mosley's Motion to Dismiss [55]; Defendants John D. Kennedy, M.D., and Lorrie Tate's Motion to Dismiss [54]; Wellstar Health Network, Inc's Motion to Dismiss by Special Appearance [8]; David Nguyen, P.A.'s Motion to Dismiss [9]; Defendant Anna Bovee's Motion to Dismiss [68]; Plaintiffs' Motion to Amend Complaint and First Amended Complaint to Add Parties [31]; Plaintiffs' Motion for Leave to Amend Plaintiffs' Complaint, First Amended Complaint and Second Amended Complaint to Add Party [53]; and Plaintiffs' Rule 11 Motion for Sanctions Against Wellstar Health Systems, Inc. And David Nguyen [32].  After reviewing the record, the Court enters the following Order.

### **Background**

On August 3, 2010, Taylor Hogan was arrested and incarcerated at the Cobb County Adult Detention Center ("CCADC").[1]  At the time of her arrest,

---

[1] Unless otherwise noted, the facts are taken from the First Amended Complaint [13].  All well-pleaded facts in the Amended Complaint are accepted as true at the motion to dismiss stage.  Bryant v. Avado Brands, Inc., 187 F.3d 1271,

2

Taylor Hogan was twenty-three weeks pregnant.  During booking at the

CCADC, Taylor Hogan informed a jail nurse named I. Poole that she was

twenty-three weeks pregnant.  Taylor Hogan was given a pregnancy test and put

on prenatal care.  Prior to her incarceration, Taylor Hogan had a normal

pregnancy with no complications and regular visits to her OB-GYN.

On August 9, 2010, at around 6:00 p.m., Taylor Hogan started having

pains in her pelvic area and cramps.  She advised Deputy Sheriff Stoker of the

pain and cramping.  Deputy Stoker did not take any action, but directed her to

lie down.  At this time, Taylor Hogan was at least twenty-four weeks pregnant.

For the next hour, Taylor Hogan continued to complain about her pain

and cramping.  She was taken to a pod containing forty other inmates.  At that

point, the pain became unbearable and she started crying and asking to see a

doctor.  Fellow inmates called for help and Taylor Hogan was placed in a

nearby hallway to await transport to the infirmary.  For several hours, she was

left in the hallway while she cried and vomited.

At about 11:00 p.m., Taylor Hogan was admitted to the infirmary.  Jail

personnel did not call a doctor.  Defendant David Nguyen, a Physician's

---

1273 n.1 (11th Cir. 1999).

Assistant on duty, ordered that Taylor Hogan remain in the infirmary until she could be seen by a doctor the next morning.  Defendant Nguyen did not perform a physical examination of Taylor Hogan or prescribe any further medical treatment.  Defendants Bovee, Taylor, and Mosley were nurses staffed in the infirmary.  They did not provide any medical care to Taylor Hogan.  No jail medical staff performed a cervical examination or monitored the fetal heart rate. The jail did not have a fetal heart monitor.

Taylor Hogan was without fluids in the infirmary, so she requested water. Deputy Stoker delivered water to the front of her infirmary room, but she could not reach it.  Taylor Hogan asked Deputy Stoker to hand her the water, but Deputy Stoker refused, so Taylor Hogan crawled to get the water.

At approximately 12:55 a.m. on August 10, 2010, Taylor Hogan delivered her baby, Savante Hopkins, Jr., in the bathroom without assistance. The baby fell on the concrete floor head first.  The jail medical staff placed Savante on top of his mother's stomach, but did not perform an examination of the baby.  The medical staff did not cut the umbilical cord.  Minutes after Savante was born, jail medical staff called an ambulance.  No medical care was provided to the baby until the ambulance arrived.

4

Within an hour of delivery, Taylor Hogan and Savante were admitted to Wellstar Cobb County Hospital. The doctors at the hospital predicted that Savante would live for several hours and they reunited him with Taylor Hogan. Savante Hopkins, Jr. died around 9:55 a.m. on August 10, 2010.

Taylor Hogan and Savante Hopkins, Sr., for themselves and on behalf of Savante Hopkins, Jr., assert several claims against Defendants, including: violation of 42 U.S.C. § 1983 (the only federal law at issue), negligence, medical malpractice, and respondeat superior or supervisory liability. All Defendants have moved to dismiss the claims against them.

## Discussion

### I.      Legal Standard - Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In order to withstand a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  Id.

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555.

II.     **Analysis**

A.     **Claims Against County Defendants**

Neil Warren is and was at all times relevant to this dispute the Sheriff of Cobb County.  Plaintiffs claim that Sheriff Warren and Cobb County violated

42 U.S.C. § 1983 (Count I).  Cobb County is named in Count IV as an entity "responsible for the wrongful acts and omissions of its agents or employees acting within the scope of their authority or employment and as such, are responsible for the negligence, violation of 42 U.S.C. § 1983, and deliberate indifference of its employees" ("respondeat superior" theory).  Cobb County is also named in Count VI as an entity that "breached [its] duty by failing to provide adequate supervision and training on monitoring pregnant patients and providing medical care to pregnant patients and their newborn infants" ("inadequate training and supervision" theory).  County Defendants move to dismiss the claims against them under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  (See generally, County Def.s' MTD, Dkt. [59].)

    1.    Cobb County

To the extent Plaintiff relies on a theory of respondeat superior to establish Cobb County's liability under 42 U.S.C. § 1983, the claim must fail. "The Supreme Court has placed strict limitations on municipal liability under § 1983.  A county's liability under § 1983 may not be based on the doctrine of respondeat superior."  Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir.

2003) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989) and <u>Monnell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978)).

To establish municipal liability under § 1983, Plaintiffs must allege facts to show the *county's* culpability in the alleged constitutional violation. "A county is 'liable under section 1983 only for acts for which the county is actually responsible.'" <u>Id.</u> (quoting <u>Marsh v. Butler Cnty.</u>, 268 F.3d 1014, 1027 (11th Cir. 2001)). "Indeed, a county is liable only when the county's official policy causes the constitutional violation. Thus, [Plaintiffs] must identify a municipal policy or custom that caused [their] injury." <u>Id.</u> (internal quotations and citations omitted).

To establish liability under § 1983 based on a failure to train or supervise subordinates, "a plaintiff must show that the 'failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure actually caused the injury of which the plaintiff complains.'" <u>McDaniel v. Yearwood</u>, No. 2:11-CV-00165-RWS, 2012 WL 526078, at *16 (N.D. Ga. Feb. 16, 2012) (quoting <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1397 (11th Cir. 1994)). "Failure to train can amount to deliberate indifference when the need for more or different training is obvious,

8

... such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, ... and when the failure to train is likely to result in violation of the constitutional right." Id.

Here, Plaintiffs have not identified any policy or custom adopted or promulgated by Cobb County that caused their injury.  They also have not pointed to any history of abuse or widespread problems that would have put the County on notice regarding the need for more training or supervision.  The Amended Complaint contains only conclusory, vague allegations about the County's failure to provide adequate supervision, training, emergency pregnancy plans, equipment, and staff.  (Amended Complaint, Dkt. 13] at ¶¶ 54-57.)  Furthermore, Plaintiffs have not sufficiently pled causation.  See Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981) (the municipal policy must be the "moving force" behind the constitutional violation for a county to be liable). Therefore, Plaintiffs' claims against Cobb County for violation of § 1983 (Counts I, IV, and V) are **DISMISSED.**

### 2.    Sheriff Warren - Official Capacity

County Defendants argue that Sheriff Warren, in his official capacity, is entitled to Eleventh Amendment immunity and therefore, this Court lacks

9

subject-matter jurisdiction over Plaintiffs' § 1983 claim against him.  The

Eleventh Amendment protects states from being sued in federal court without

their consent.  Here, Defendants argue, Sheriff Warren was acting as an arm of

the state and consequently, the state's immunity extends to him.  Plaintiffs

counter that Sheriff Warren was acting as an arm of the county in this case and

is therefore not entitled to Eleventh Amendment immunity.

        "Whether a defendant is an 'arm of the state' must be assessed in light of

the particular function in which the defendant was engaged when taking the

actions out of which liability is asserted to arise."  Manders v. Lee, 338 F.3d

1304, 1308 (11th Cir. 2003).  The Eleventh Circuit has held that generally, "a

sheriff's 'authority and duty to administer the jail in his jurisdiction flows from

the State, not [the] County.'"  Purcell ex rel. Estate of Morgan v. Toombs Cnty.,

Ga., 400 F.3d 1313, 1325 (11th Cir. 2005) (quoting Manders, 338 F.3d at

1305.  However, Manders laid out four factors to determine whether an entity

is an "arm of the State" in carrying out a particular function: "(1) how state law

defines the entity; (2) what degree of control the State maintains over the entity;

(3) where the entity derives its funds; and (4) who is responsible for judgments

against the entity."  388 F.3d at 1309.  Applying the Manders factors, at least

one Court in this District has concluded that when caring for the medical needs of inmates, the Sheriff acts as an arm of the county, not the state.  See Dukes v. Georgia, 428 F. Supp. 2d 1298, 1321-22 (N.D. Ga. 2006).

This Court, however, need not decide the issue.  If Sheriff Warren is considered an arm of the state, he is entitled to Eleventh Amendment immunity. If he is considered an arm of the County, the claim against him is in reality a claim against Cobb County, and for the reasons stated above in Part II.A.1., supra, the claim fails.  See Brandon v. Holt, 469 U.S. 464, 471 (1985). Therefore, the § 1983 claim against Sheriff Warren in his official capacity is **DISMISSED**.

### 3.    Sheriff Warren - Individual Capacity

Plaintiffs assert that Sheriff Warren, in his individual capacity, and all other Defendants violated 42 U.S.C. § 1983 "by failing to provide them with adequate and timely medical treatment, access to qualified medical providers, and appropriate medical tests and intervention."  (Amended Complaint, Dkt. [13] at 2.)  Plaintiffs allege that these failures by Defendants amounted to deliberate indifference to serious medical needs in violation of their Eighth

Amendment right to be free from cruel and unusual punishment.[2]  (Id. at 14.)

Sheriff Warren contends that he is entitled to qualified immunity and therefore,

the § 1983 claim against him in his individual capacity must be dismissed.  The

Court agrees with Sheriff Warren.

<blockquote>a.     Standard for § 1983 liability based on inadequate medical care</blockquote>

To bring a § 1983 claim based on inadequate medical care, Plaintiffs

must show there was "deliberate indifference to serious medical needs."  Estelle

v. Gamble, 429 U.S. 97, 106 (1976).  The analysis includes an objective and a

subjective component.  "First, a plaintiff must set forth evidence of an

objectively serious medical need.  Second, a plaintiff must prove that the prison

official acted with an attitude of 'deliberate indifference' to that serious medical

need." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal

quotations and citations omitted).

---

[2] As various Defendants note, Plaintiffs have incorrectly alleged violations of the Eighth Amendment.  Because Taylor Hogan was a pre-trial detainee during the events in question, the due process clause of the Fourteenth Amendment is the applicable constitutional provision.  See Hamm v. DeKalb County, 774 F.2d 1567, 1572 (11th Cir. 1985).  However, the minimal standards for treatment of pre-trial detainees under the Fourteenth Amendment "can be defined by reference to the eighth amendment rights of convicted inmates."  Id. at 1574.

AO 72A
(Rev.8/82)

"A serious medical need is considered 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  The medical need must be "one that, if left unattended, poses a substantial risk of serious harm." Evans v. St. Lucie Cnty. Jail, 448 Fed. App'x 971, 974 (11th Cir. 2011).

Deliberate indifference, the subjective component, is more than mere negligence.  "An official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Farrow, 320 F.3d at 1246 (quoting Lancaster v. Monroe Cnty., 116 F.3d 1419, 1425 (11th Cir. 1997)).  Thus, deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

b.      Qualified Immunity Standard

Plaintiffs allege that Defendants provided inadequate medical care to both Taylor Hogan and Savante Hopkins, Jr.  Sheriff Warren claims that he is

entitled to qualified immunity on both accounts.  Defendants sued in their

individual capacities for discretionary acts are protected from suit by the

doctrine of qualified immunity, unless those acts violate "clearly established

statutory or constitutional rights of which a reasonable person would have

known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"To receive qualified immunity, a government official must first prove

that he was acting within his discretionary authority."  McDaniel, 2012 WL

536078, at *13 (quoting Cottone v. Jenne, II, 326 F.3d 1352, 1357 (11th Cir.

2003)).  "Once the government official has satisfied this initial burden, the

burden shifts to the plaintiff to show that the official is not entitled to qualified

immunity."  Id.  The latter part of the analysis is two-pronged.  "First, the court

addresses the 'threshold question' of whether the facts as alleged, viewed in the

light most favorable to the plaintiff, establish a constitutional violation."  Id.

(citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "Only if there is a

constitutional violation does the court proceed to the second step to determine

whether that constitutional right was clearly established."  Id.

To show that a constitutional right was clearly established, a plaintiff

must show that "when the defendant acted, the law established the contours of a

14

right so clearly that a reasonable official would have understood his acts were unlawful." Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). To determine whether an official would have understood his conduct to be lawful or unlawful, parties and courts must look to case law at the time of the alleged violation. "[T]he salient question is whether the law at the time of the alleged violation gave officials 'fair warning' that their acts were unconstitutional." McDaniel, 2012 WL 536078, at *13 (quoting Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003)). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." Post, 7 F.3d at 1557.

c.      Standards Applied to Sheriff Warren

The Court finds that Plaintiffs have not alleged sufficient facts to make the threshold showing that Sheriff Warren, in his individual capacity, committed a constitutional violation.[3]  Specifically, Plaintiffs have not alleged facts to satisfy the subjective requirement for § 1983 liability.  The deliberate indifference standard requires subjective knowledge of a risk of serious harm

---

[3] It is undisputed that Sheriff Warren was acting within his discretionary authority.

and disregard of that risk.  Here, there are no allegations that Sheriff Warren

ever came into contact with Taylor Hogan, particularly not during the events in

question.  Furthermore, there are no allegations that Sheriff Warren was ever

informed of Taylor Hogan's medical complications.

The Amended Complaint states that "Defendants, each and every one of

them, had substantial knowledge that Ms. Hogan was pregnant because it was

documented in her inmate file and visible upon site."  (Amended Complaint,

Dkt. [13] ¶ 32.)  Assuming for the sake of argument that Sheriff Warren did see

Taylor Hogan's inmate file, that is not enough to show that he had subjective

knowledge of a serious medical need.  "It is well established that simply being

pregnant – without more – does not constitute a serious medical condition."

Webb v. Jessamine Cnty. Fiscal Court, 802 F. Supp. 2d 870, 878 (E.D. Ken.

2011).  Furthermore, Plaintiffs' conclusory statement that "the risk of such an

incident was obvious" is insufficient to show the Sheriff's subjective

knowledge of a serious medical need or his disregard of that need.  (See Pl.s'

Resp. to County Def.s' MTD, Dkt. [73] at 31.)  Therefore, Plaintiffs' § 1983

claim against Sheriff Warren in his individual capacity is **DISMISSED**.

16

**B.      Claims Against Board of Health Defendants**

The Cobb County Board of Health ("CCBH") provides nursing staff to the CCADC.  Evelyn Wolfram Taylor, Maydia Latreece Mosley, and Lorrie Tate are nurses employed by the CCBH.  John D. Kennedy, M.D. is the Director of the CCBH.

Plaintiffs allege that all Board of Health Defendants violated § 1983 (Count I) and committed medical malpractice (Count III).[4]  Plaintiffs bring a respondeat superior claim against the CCBH on grounds that it is "responsible for the wrongful acts and omissions of its agents or employees acting within the scope of their authority or employment and as such, [is] responsible for the negligence, violation of 42 U.S.C. § 1983, and deliberate indifference of its employees" (Count IV). (Amended Complaint, Dkt. [13] ¶ 50.)  Plaintiffs also bring a claim for "inadequate training and supervision" against the CCBH

---

[4] Although Count III is labeled "Negligence of CCBH and Its Employees," it alleges that "CCBH and its employees named herein failed to bring to this relationship a reasonable degree of care and skill of physicians, physicians assistants, and nurses." (Amended Complaint, Dkt. [13] ¶ 51.)  Further, the count alleges, "CCBH and its employees owed a duty to their patients, Ms. Hogan and Baby Hopkins, to bring to the exercise of their profession a reasonable degree of skill and care." (Id. ¶ 52.)  Therefore, the Court finds that this count is properly considered a medical malpractice claim, not a claim for mere negligence.

17

(Count VI).  The Board of Health Defendants move to dismiss all of the claims against them.

>    1.    CCBH

Plaintiffs' § 1983 claims against the CCBH fail for the same reasons they fail against Cobb County.  (See Part II.A.1, supra).  Respondeat superior liability is not available under § 1983.  Furthermore, Plaintiffs have failed to state a claim for § 1983 liability based on a CCBH policy or on the CCBH's failure to adequately train or supervise its employees.  Plaintiffs raise the same vague, conclusory allegations against the CCBH as they assert against Cobb County.  No specific CCBH policy or custom is identified as the driving force behind the alleged constitutional violations.  Furthermore, no causation is shown between a CCBH policy or the CCBH's failure to train its staff and Plaintiffs' injuries.  Therefore, the § 1983 claims against the CCBH are **DISMISSED**.

>    2.    John D. Kennedy, M.D.

In their Amended Complaint, Plaintiffs fail to make *any* factual allegations against Dr. Kennedy.  He is simply identified as the Director of the CCBH and therefore, the person "responsible for management of the CCBH

AO 72A
(Rev.8/82)

including responsibility for the safety, well-being, and medical care of inmates at the CCADC at all times relevant hereto." (Amended Complaint, Dkt. [13] ¶ 15.)

a.      Official capacity

The employer of Dr. Kennedy is in dispute. (See Pl.s' Resp. to Board of Health Def.s' MTD, Dkt. [60] at 20-23.) However, as Dr. Kennedy correctly points out, the resolution of this dispute is immaterial. If Dr. Kennedy is employed by the State of Georgia, he is entitled to Eleventh Amendment immunity. (See discussion, supra, Part II.A.2). On the other hand, if he is employed by the CCBH, the claims against him in his official capacity are effectively claims against the CCBH, and those claims fail for the reasons stated above. (Id.) Therefore, the claims against Dr. Kennedy in his official capacity are **DISMISSED**.

b.      Individual capacity

Plaintiffs have alleged no facts against Dr. Kennedy in his individual capacity to support a § 1983 claim. For the same reasons that Plaintiffs' § 1983 claim fails against Sheriff Warren in his individual capacity (see discussion, supra, Part II.A.3.c.), it must fail here. Plaintiffs simply have not alleged

19

sufficient facts – or any facts – to show a plausible claim under § 1983, particularly with regard to the subjective component of their inadequate medical care claim.  Therefore, the § 1983 claim against Dr. Kennedy in his individual capacity is **DISMISSED.**

        3.      <u>Lorrie Tate</u>

Like Dr. Kennedy, Tate is not mentioned in any of the factual allegations in the Amended Complaint.  She is simply identified (erroneously) as an employee of the Cobb County Sheriff's Department and/or Cobb County.  To the extent Plaintiffs raise § 1983 claims against her in her official and individual capacities, those claims fail for the reasons stated above with regard to Dr. Kennedy.  Therefore, the § 1983 claims against Tate are **DISMISSED.**

        4.      <u>Evelyn Taylor and Maydia Latreece Mosley</u>

Plaintiffs allege that Taylor and Mosley were staffed in the infirmary during the events in question, but provided no medical care to Taylor Hogan or Savante Hopkins, Jr.  (Amended Complaint, Dkt. [13] ¶¶ 37-50.) Consequently, Plaintiffs have raised § 1983 and medical malpractice claims against these Plaintiffs.  Taylor and Mosley argue that they are entitled to

qualified immunity as to the § 1983 claim against them.  The Court agrees with Defendants.

a.        Pre-delivery (Taylor Hogan)

First, the Court will determine whether the facts alleged could support a finding that a constitutional violation occurred.  Regarding the objective component of Plaintiffs' § 1983 claim, there is no allegation that a physician diagnosed Taylor Hogan's pre-term labor and mandated treatment.  Therefore, the inquiry is whether her medical need was so obvious that a lay  person would have recognized the need for immediate medical attention.

Again, it is well established that simply being pregnant is not a serious medical condition.  Webb, 802 F. Supp. 2d at 878.  However, "an inmate in labor has a serious medical need."  Id.  The question is, at what point does it become obvious to a layperson that a woman is in labor?  Defendants identify two cases that are instructive on this issue: Webb and Patterson v. Carroll Cnty. Det. Ctr., No. 05-101-DLB, 2006 WL 3780552 (E.D. Ken. Dec. 20, 2006).

In Webb, the court found that a serious medical need existed when the plaintiff, nine months pregnant, displayed "readily recognizable symptoms of labor," including: sharp back pain and severe cramping, a sensation that she was

21

"burning up" and needed to have a bowel movement, vaginal discharge that she believed to be the mucus plug from her cervix, and rupture of the amniotic sac (i.e., her water broke).  802 F. Supp. 2d at 880-81.  The court in Webb distinguished Patterson, which involved an inmate in her second trimester who "complained of no pregnancy-related medical problems other than cramping." Id. at 880.  According to the Webb court, "[r]ather than looking for a bright line in the course of labor, Courts consider the amount of time left before a pregnant inmate reaches the full term of her pregnancy, the symptoms of labor that she has exhibited, any previous or potential complications with respect to the inmate's pregnancy, and –ultimately – the reaction of jail officials."  Id. (citing Patterson, 2006 WL 3780552, at *3-4.)

Here, all of the Webb factors weigh against concluding that Taylor Hogan had an obvious and serious medical need.  The Amended Complaint states that Taylor Hogan was twenty-four weeks pregnant (i.e., in her second trimester) and that prior to incarceration, "she had a normal pregnancy with regular visits to the OBGYN with no complications."  (Amended Complaint, Dkt. [13] ¶¶ 27, 29.)  The Amended Complaint also indicates that Taylor Hogan was put on prenatal care as soon as she was booked at the CCADC.  (Id. ¶ 26.)

22

The symptoms reported by Taylor Hogan to jail personnel were cramps, pain and vomiting.  (Id. ¶¶ 28, 31, 33.)  These symptoms are not as serious or obviously pregnancy-related as amniotic fluid leakage, vaginal discharge, or vaginal bleeding – conditions which have been found to present objectively serious medical needs in pregnant inmates.  See Townsend v. Jefferson Cnty., 601 F.3d 1152 (11th Cir. 2010) (serious medical need existed where plaintiff admitted using crack cocaine and smoking cigarettes every day of her pregnancy and experienced abdominal pain and vaginal bleeding for an entire day); Goebert v. Lee Cnty., 510 F.3d 1312 (11th Cir. 2007) (serious medical need existed where inmate suffered prolonged amniotic leakage).  Therefore, Plaintiffs have not alleged sufficient facts to show that Taylor Hogan presented an objectively serious medical need prior to delivery of her son.

Even if an objectively serious medical need existed, Plaintiffs have not shown that Defendants Taylor and Mosely acted with deliberate indifference toward that need.  Ms. Hogan was admitted to the infirmary around 11:00 p.m. (Amended Complaint, Dkt. [13] ¶ 34.)  There are no allegations that Defendants Taylor or Mosely were aware of Ms. Hogan's condition before that time.  David Nguyen, a physician's assistant, ordered that Ms. Hogan remain in the infirmary

23

until she could be seen by a doctor in the morning.  (Id. ¶ 35.)  There are no allegations that Ms. Hogan's condition worsened or changed after Nguyen gave his orders.  Ms. Hogan was left in a bed in the infirmary.  The Amended Complaint states that Ms. Hogan requested fluids from Deputy Stoker, but does not indicate that Ms. Hogan requested any additional assistance from Defendants Taylor or Mosley.  (Id. ¶ 44.)

Around 1:00 a.m., just two hours after being admitted to the infirmary, Taylor Hogan gave birth to Savante Hopkins Jr. without assistance in the bathroom.  The Court cannot conclude that Defendants Taylor and Mosley acted with deliberate indifference when they obeyed the instructions of a superior (Nguyen) and when Taylor Hogan's condition and symptoms did not change or worsen until she gave birth.  This is not a case of prolonged or intentional neglect of an obvious and serious medical need.  Therefore, Plaintiffs have not satisfied the objective or the subjective standard for § 1983 liability as to these Defendants before Taylor Hogan delivered her baby.

       b.    Post-delivery (Taylor Hogan and Savante Hopkins, Jr.)

24

Defendants concede that after Taylor Hogan gave birth, an objectively serious medical need arose as to both her and her infant.  (Def.s CCBH, Taylor, and Mosley MTD Br., Dkt. [55-1] at 14.)  However, Taylor and Mosley assert that there are no allegations showing that their response to this serious medical need amounted to deliberate indifference.  (Id. at 14-15.)  Again, the Court agrees with Defendants.

Plaintiffs allege that Defendants demonstrated deliberate indifference by failing to examine the baby and sever the umbilical cord.  (Amended Complaint, Dkt. [13] ¶¶ 47-48.)  Instead, Defendants simply placed the baby on top of his mother's stomach.  (Id. ¶ 46.)  However, the Amended Complaint admits that jail medical staff called an ambulance within minutes of the delivery, and that Taylor Hogan and her baby were admitted to a hospital within an hour of delivery.  (Id. ¶¶ 49, 51.)

Given the limited resources at the jail infirmary to treat a severely premature baby, jail medical staff opted to call for emergency services and have Ms. Hogan and her baby transported to a hospital facility.  These actions do not show intentional neglect or deliberate indifference.  There is no indication that Defendants delayed in calling for help or that they had any clearly superior

25

option available to them for the treatment of Ms. Hogan and Baby Hopkins.

The bottom line is, the jail medical staff took action and they acted quickly.

See Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) (courts will not

second guess the propriety or adequacy of a particular course of treatment and

"a simple difference in medical opinion" does not constitute deliberate

indifference).  Therefore, based on the allegations in the Amended Complaint,

the Court cannot conclude that Defendants Taylor and Mosley acted with

deliberate indifference toward Taylor Hogan or Savante Hopkins, Jr. following

the birth.

The Court also notes that Plaintiffs have not identified any case law

showing that Defendants Taylor and Mosley's conduct violated a "clearly

established" constitutional right before or after the delivery.  In fact, the case

law discussed above suggests that there was no constitutional violation, let

alone a "clearly established" right.  Therefore, the § 1983 claims against these

Defendants are **DISMISSED**.

### C.     Claims Against Wellstar Defendants

Wellstar is a private entity that contracted to provide administrative

services, medical care, and medical personnel to the CCADC.  David Nguyen is

26

a physician's assistant and is employed by Wellstar.  Anna Bovee is a nurse employed by Wellstar.  Plaintiffs assert claims for violation of § 1983 (Count I) and medical malpractice (Count II) against all Wellstar Defendants.  Plaintiffs assert a claim based on respondeat superior against Wellstar for "the negligence, violation of 42 U.S.C. § 1983, and deliberate indifference of its employees" (Count IV).  Plaintiffs also bring a claim for "inadequate training and supervision" against Wellstar (Count VI).  Finally, Plaintiffs assert a claim against David Nguyen for practicing medicine without the guidance or supervision of a licensed medical physician (Count VII).

At the outset, the Court must determine whether the Wellstar Defendants should be considered state actors in this case.  If they were acting under color of state law, § 1983 and qualified immunity apply to them; if they were not, there can be no § 1983 liability.  "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law.  Anyone whose conduct is 'fairly attributable to the state' can be sued as a state actor under § 1983." Filarsky v. Delia, 132 S. Ct. 1657, 1661 (2012) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982)).

In <u>Filarsky</u>, the Court addressed the issue of "whether an individual hired by the government to do its work is prohibited from seeking [qualified] immunity, solely because he works for the government on something other than a permanent or full-time basis." <u>Id.</u> at 1660. <u>Filarsky</u> involved a private attorney who was hired by a city to investigate a particular city employee suspected of committing fraud. The attorney and several public employees were sued by the suspect for violation of § 1983.

The Court concluded that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis," and that the private attorney was entitled to qualified immunity like the public officials who were sued based upon the same events. <u>Id.</u> at 1665. The Court reasoned that "[a]ffording immunity not only to public employees but also to others acting on behalf of the government similarly serves to 'ensure that talented candidates [are] not deterred by the threat of damages suits from entering public service.'" <u>Id.</u> (quoting <u>Richardson v. McKnight</u>, 521 U.S. 399, 408 (1997)). "Indeed, it is often when there is a particular need for specialized knowledge or expertise that

28

the government must look outside its permanent work force to secure the services of private individuals." Id. at 1665-66.

The Filarsky Court distinguished Richardson, which involved prison guards employed by a private company. In Richardson, the Court concluded that, based on the particular circumstances of the case, the privately-employed guards were not entitled to qualified immunity. 521 U.S. at 413. Specifically, the Court stated:

> [W]e have answered the immunity question narrowly, in the context in which it arose. The context is one in which a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertak[ing] that task for profit and potentially in competition with other firms. The case does not involve a private individual briefly associated with a government body, serving as an adjunct to government in an essential government activity, or acting under close official supervision.

Id. The Richardson opinion includes an in-depth analysis of the history and purposes behind the doctrine of qualified immunity. Ultimately, the Court concluded, the doctrine was not meant to apply to private actors like the prison guards in Richardson.

29

The Wellstar Defendants argue that <u>Filarsky</u> controls here and therefore, they are entitled to qualified immunity as to the § 1983 claim.  Plaintiffs maintain that this case is more analogous to <u>Richardson</u> and therefore, qualified immunity does not apply.  (<u>See</u> Pl.s' Resp. to Def. Bovee's MTD, Dkt. [84-1] at 11-17.)  Of course, if Defendants were not acting under color of state law for qualified immunity purposes, they were not acting under color of state law for purposes of § 1983 liability.

Given the similarities between the Wellstar Defendants and the private defendants in <u>Richardson</u>, and Plaintiffs' own position that the Wellstar Defendants did not act under color of state law,[5] the Court finds that the Wellstar Defendants should be treated as private actors in this case.  Therefore, the § 1983 claims against the Wellstar Defendants are **DISMISSED.**

---

[5] Plaintiffs' reliance on <u>Richardson</u> has substantial merit.  This case does not involve a single individual briefly associated with a government body like the private attorney in <u>Filarsky</u>.  Instead, like the defendants in <u>Richardson</u>, the Wellstar Defendants are affiliated with a private firm, systematically organized to assume a major lengthy administrative task (administration of health clinics in Cobb County detention facilities, as well as provision of medical care and personnel in those facilities) with limited direct supervision by the government, undertaking that task for profit and potentially in competition with other firms.  (<u>See</u> Agreement Regarding Inmate Medical Care, Dkt. [60-3].)

30

In sum, the Court dismisses all § 1983 claims against all Defendants in this case.  The remaining causes of action are state law claims.  The Court declines to exercise jurisdiction over these remaining claims.  Therefore, all remaining state law claims are **DISMISSED without prejudice**.

### D.  Plaintiffs' Motions

#### 1.    Motions to Amend

Plaintiffs have filed multiple motions to amend the Amended Complaint to add parties. ([31] and [53].)  In light of the Court's dismissal of all of Plaintiffs' claims in this action, these motions are **DENIED**.

#### 2.    Motion for Sanctions

Plaintiffs move for Rule 11 sanctions against Defendants Wellstar Health Network, Inc. and David Nguyen [32] on grounds that these Defendants' motions to dismiss are "frivolous," "unfounded in both law and fact," and "an abuse of the litigation process." (Pl.s' Rule 11 Br., Dkt. [32-1] at 2.) Specifically, Plaintiffs challenge Defendants' arguments that an expert affidavit was required with the Complaint to set forth a claim for medical malpractice, and that without such affidavit, Plaintiffs' Complaint did not satisfy Rule 8 notice pleading standards.

31

Rule 11 allows a court to impose sanctions on an attorney who submits a written motion "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(c). Further, sanctions may be imposed if the claims, defenses, and other legal contentions in a written motion are not supported by law or by a nonfrivolous argument for extending, modifying, or reversing existing law. Id. The Court finds no circumstances warranting sanctions to be present here.

Defendants' argument regarding the need for an expert affidavit at the pleading stage in a medical malpractice case is based on O.C.G.A. § 9-11-9.1. They assert that without such an affidavit, Plaintiffs cannot state a plausible claim for medical malpractice as required by Rule 8, Twombly, and Iqbal. (See discussion, supra, Part I.) This Court has previously held that § 9-11-9.1 is a procedural rule and does not apply in federal court. See Zurich Am. Ins. v. Sheffer Eng'g Co., No. 1:09-CV-666-RWS, 2011 WL 344095, at *4 (N.D. Ga. Jan. 31, 2011). However, Defendants, in their written and oral submissions, have presented legitimate arguments for why they believe an expert affidavit in a medical malpractice case should be considered a substantive requirement under Georgia law, and why the case law in this District should be modified to

32

reflect that.  Defendants also cite case law from other districts to support their arguments.

As Defendants correctly note, "Rule 11 was not intended to chill innovative theories and vigorous advocacy that bring about vital and positive changes in the law."  Fox v. Acadia State Bank, 937 F.2d 1566, 1569 (11th Cir. 1991) (internal citations and quotations omitted).  "The standard for determining whether conduct is sanctionable under Rule 11 is 'reasonableness under the circumstances.'"  Id.  The Eleventh Circuit has not yet addressed this question regarding expert affidavits, so the issue remains unsettled.  Defendants have raised reasonable arguments regarding their interpretation of this unsettled area of law, and in so doing, have preserved the issue for appeal.  Therefore, the Court finds that Rule 11 sanctions are not appropriate here and Plaintiffs' motion is **DENIED**.

### Conclusion

Based on the foregoing, all Defendants' Motions to Dismiss [8, 9, 54, 55, 59 and 68] are **GRANTED** with regard to Plaintiffs' 42 U.S.C. § 1983 claims. All remaining state law claims against all Defendants are **DISMISSED without prejudice.**  Plaintiffs' Motions to Amend the Amended Complaint to Add

33

Parties are **DENIED** [31 and 53].  Plaintiffs' motion for Rule 11 sanctions [32]

is **DENIED.**

      **SO ORDERED**, this __14th__ day of March, 2013.


**RICHARD W. STORY**
United States District Judge